**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**RIZELLE AARON**                                                                                                  **PLAINTIFF**

**v.**                                **CASE NO. 4:08cv00600 BSM**

**WILLIAM SHELLEY, Individually,
and in His Official Capacity as Lieutenant
in and for The City of Jacksonville
Police Department; GREGORY ROZENSKI,
Individually, and in His Official Capacity as a
Police Officer in and for The City of Jacksonville
Police Department; and THE CITY OF
JACKSONVILLE, ARKANSAS**                                                                           **DEFENDANTS**

**ORDER**

Plaintiff Rizelle Aaron ("Aaron") is suing defendants City of Jacksonville, Arkansas; William Shelley, individually and in his official capacity; and Gregory Rozenski, individually and in his official capacity (collectively "defendants") claiming that defendants violated his constitutional rights by falsely arresting him. Aaron claims that defendants violated his rights pursuant to a policy, pattern, and practice of the Jacksonville Police Department. Defendants have moved for summary judgment [Doc. No. 21], to which Aaron has responded [Doc. No. 34], and the defendants replied [Doc. No. 37]. For the reasons set forth below, summary judgment is granted as to Aaron's claims against the City of Jacksonville and against Shelley and Rozenski in their official capacities. Summary judgment is denied as to Aaron's claims against Shelley and Rozenski in their individual capacities.

I. FACTS

Taking the facts in the light most favorable to Aaron, Aaron was arrested by the Jacksonville Police Department on September 17, 2005. Ex. 2, Jacksonville Police Department uniform incident report, plaintiff's response to defendants' motion for summary judgment (Doc. No. 34) ("pltf.'s resp."). The incident report states that Aaron was arrested for committing four counts of criminal impersonation (impersonating a police officer); four counts of false imprisonment in the second degree; and one count of terroristic threatening in the first degree. *Id*. The report lists Cory Thompson, Megan Jones, Lara Long, and Mark Allen Curtis as the victims of Aaron's criminal conduct. *Id*.

Although the charges leveled at Aaron may initially lead one to believe that he is a menace to society who must be stopped by all means, the underlying facts of the case, when taken in the light most favorable to Aaron, lead one to a different conclusion. Indeed, on September 17, 2005, Aaron went to Dupree Park in Jacksonville with his family. Ex. 3, Aaron affidavit, ¶ 2, pltf.'s resp. He had agreed to meet some other people there and to then go to his son's football game. Ex. 1, Loftis narrative supplemental report, pltf.'s resp. While at the park, Aaron saw Thompson, Jones, Long and Curtis engaged in what he thought was an illegal drug deal. Aaron states that, at the very least, the four individuals "were engaged in illegal activity and, plainly, in the possession of illegal drugs." Plaintiff's response to defendants' statement of facts (Doc. No. 36) ("Pltf.'s resp. to stmt. of facts"), ¶ 1. Aaron approached the individuals and told them to produce the drugs and place them on the car. Ex. 3, Aaron affidavit, ¶ 3, pltf.'s resp. Thompson, Jones, Long and Curtis, whom the

2

incident report defines as victims, produced crack cocaine, a small amount of marijuana and four vicodin pills. *Id*.

Although Aaron approached the vehicles of the four individuals and told them to produce their drugs, at no time did he represent to them that he was a police officer. Ex. 3, Aaron affidavit, ¶ 4, pltf.'s resp.; Long statement, pltf.'s resp. to stmt. of facts. Indeed, Long's statement to the police states that Aaron told them to get out of their cars and to get a sheet of paper and write their names, addresses and phone numbers down. Long statement, pltf.'s resp. to stmt. of facts. Aaron then told them that he was trying to save them from a lot of trouble. *Id.* Long states that Aaron "never told me his name or that he was a cop[;] he just said that we were in a lot of trouble." *Id*.

Aaron then called the Jacksonville Police Department and requested that officers come to the park. Ex. B, Burroughs narrative supplemental report, defendants' statement of facts (Doc. No. 23) ("stmt. of facts"). Prior to officers arriving, Aaron flagged down Deputy Withers with the Pulaski County Sheriff's Department. Ex. 3, Aaron affidavit, ¶ 6, pltf.'s resp. Deputy Withers states that Aaron represented to her that he was a Lonoke Narcotics Officer; however, Aaron disputes this representation and states that to the extent that Withers perceived him as saying that he was then employed by the Lonoke County Sheriff's Department, it was her misapprehension. *Id*.; Ex. C, Withers statement, stmt. of facts. Deputy Withers stayed with Aaron and the four individuals until Jacksonville police officers arrived. Ex. 3, Aaron affidavit, ¶ 6, pltf.'s resp. At no time did Aaron exert any sort of force or even any sort of physical intimidation on the four individuals. *Id.* He never had a gun and

never made any threats. *Id*. at ¶ 5. Indeed, he states that he stayed with the individuals approximately one minute until the police arrived. *Id*. at ¶ 7.

When Jacksonville police officers, Loftis and Curtis arrived, Aaron asked if he could leave. *Id*. at ¶ 8. He had a football game to attend with his son, so he provided the officers his contact information and agreed to come to the Jacksonville Police Department at a later time to give a statement. *Id*. Loftis and Curtis allowed him to leave. *Id*. After leaving the scene, Aaron received a very angry, threatening phone call from Lieutenant Shelley of the Jacksonville Police Department. *Id*. at ¶ 9. Shelley told Aaron to get his "ass" back to the park, and threatened his arrest. *Id*. Aaron returned to the park, and was questioned by Shelley regarding his status as a law enforcement officer. *Id*. at ¶ 11. Aaron told Shelley that he was a certified officer through the England Police Department. *Id*. Indeed, had Shelley checked with the England Police Department, Aaron's statements would have been confirmed. *See* Ex. 2, letter from Robert G. Retford, Chief of Police, City of England, pltf.'s resp. In its entirety the letter from England's Police Chief to the Jacksonville Police Department states as follows:

September 21, 2005

    To:    Jacksonville Police Department
    From: Robert G. Retford
            Chief of Police
            City of England

    Re:    Rizelle Aaron

Sirs:

> This letter is a follow up to the phone conversation regarding Rizelle Aaron and the incident that occurred in the City of Jacksonville.
>
> Mr. Aaron has been employed by the England Police Department as an Auxilliary and Part Time II officer since August 2003. His main duty was narcotics enforcement which he proved to be very effective at.
>
> Due to budget cuts we were no longer able to afford to pay his salary so he has not drawn a check from the City of England since November 2004. He has however continued to supply the city with needed intel by phone or short visits when needed.
>
> He is still listed through standards as a Part Time II officer with this department although he has not physically worked on the street since November 2004.
>
> If you have any further questions please feel free to contact me.

*Id*.

Instead of verifying that Aaron was a Part Time II officer with the England Police Department, the record shows that Shelley engaged in what can only be described as a Deputy Dawg, Keystone Kops, type of questioning of Aaron regarding Aaron's law enforcement credentials. *See* Ex. 2, transcript from digital recorder from incident, pltf.'s resp. Shelley then told Officer Rozenski to arrest Aaron. Ex. 3, Aaron affidavit, ¶ 11, pltf.'s resp. Aaron was charged with impersonating an officer, terroristic threatening, and false imprisonment. Ex. I, Jacksonville arrest/disposition report, stmt. of facts. Of course, all charges were later *nolle prossed* and were never refiled. Ex. 3, Aaron affidavit, ¶ 13, pltf.'s resp.

Finally, the record shows that statements were given to the Jacksonville Police Department in which the individuals in the park admit that they possessed crack cocaine, marijuana and vicodin; however, none of the purported "victims" were arrested, but were allowed to leave on their own. The only person arrested was Aaron, a citizen and part time

5

police officer with the England Police Department who, at the very least, saw drug crime taking place in a public park and called the appropriate police department to the scene to stop it.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exist and the movant is entitled to judgment as a matter of law." *Christoffersen v. Yellow Book U.S.A.*, 536 F.3d 947, 949 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving

party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Further, "[t]he nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal citation and quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine . . ." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). It does not weigh the evidence or make credibility determinations. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

### III. DISCUSSION

Summary judgment is granted as to Aaron's claims against the City of Jacksonville and as to his claims against officers Shelley and Rozenski in their official capacities because

there is no evidence in the record indicating that Aaron's rights were violated as a result of a policy or custom of the City of Jacksonville. Summary judgment is denied as to Aaron's claims against Shelley and Rozenski in their individual capacities because a reasonable jury could find that the officers violated Aaron's clearly established constitutional rights because they lacked probable cause to arrest him. For these reasons, Aaron's claims against the City of Jacksonville and against the officers in their official capacities are dismissed with prejudice, while the claims against Shelley and Rozenski in their individual capacities shall proceed to trial.

A.  Claims against the City of Jacksonville and against
    Shelley and Rozenski in their Official Capacities

Summary judgment is appropriate as to Aaron's claims against the City of Jacksonville and against officers Shelley and Rozenski in their official capacities because nothing in the record indicates that Aaron was deprived of a constitutional right as a result of a policy or custom of the City of Jacksonville. To hold the City of Jacksonville liable under section 1983, Aaron must establish that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's officers]," or that a "constitutional deprivation [was] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Marchant v. City of Little Rock*, 741 F.2d 201, 204 (8th Cir. 1984) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-691 (1978)).

"Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who [is determined by state law to have] the final authority to establish governmental policy." *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir.1998) (citing *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 645 (8th Cir. 1990)).  "Alternatively, liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality as to constitute a 'custom or usage' with the force of law." *McGautha v. Jackson County, Mo., Collections Dept.*, 36 F.3d 53, 56 (8th Cir. 1994) (citing *Monell*, 436 U.S. at 690-691). "This standard serves to prevent municipal evasion of liability through improper delegation of policy responsibility or acquiescence in pervasive constitutional violations by [] employees." *Id.* at 56-57.

"'[C]ustom or usage' is demonstrated by: (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.,* [proof] that the custom was the moving force behind the constitutional violation." *Ware*, 150 F.3d at 882.  "Liability for an unconstitutional custom or usage, however, cannot arise from a single act. " *McGautha*, 36 F.3d at 57 (citing *Wedemeier v. City of Ballwin,* 931 F.2d 24, 26 (8th Cir. 1991) ("a single deviation from a written, official policy does not prove a conflicting custom or usage"); *Williams-El v. Johnson,* 872 F.2d 224, 230 (8th Cir. 1989)

(one occurrence of improper prison guard hiring contrary to official written policy "does not prove the existence of a" conflicting custom or usage)).

Moreover, Aaron's claims against Shelley and Rozenski in their official capacities is merely another way of suing the City of Jacksonville. *See Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (quoting *Monell,* 436 U.S. at 690 n.55, for the proposition that "[a] suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of which an officer is an agent'"). "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official . . . " *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Although Aaron's amended complaint (Doc. No. 17), ¶ 9 alleges that the "acts of Defendants Shelley and Rozenski . . . were a part of and pursuant to a policy, pattern and practice of the Jacksonville Police Department to effect the arrest of citizens (especially black citizens) without probable cause and in violation of the Constitution of the United States," nothing in the record supports this allegation. In that Aaron's claims against the City of Jacksonville and against Shelley and Rozenski in their official capacities are wholly unsupported by the evidence in the record, summary judgment is granted on those claims and they are hereby dismissed with prejudice.

B.   <u>Individual Capacity Claims against Shelley and Rozenski</u>

Shelley and Rozenski claim qualified immunity and move for summary judgment asserting that they did not violate Aaron's Fourth Amendment rights because they had probable cause to believe that a crime had been committed. In support of this position,

10

Shelley and Rozenski correctly point out that courts must look to the events on the ground when determining whether the officers had probable cause and, when making this determination, courts should not sit in ivory towers with the advantage that reflection provides and hold officers to a higher standard than what is practical. *See Adams v. Williams*, 407 U.S. 143, 149 (1972).

This court is well-aware of the hardships faced by police officers on the street and understands that in the heat of battle, officers must make split-second decisions. Consequently, the court is mindful that it cannot expect an officer at a crime scene to research the law or consult a lawyer when determining whether he has probable cause to make an arrest. The problem for Shelley and Rozenski, however, is that their arrest and detention of Aaron, the person who called them to the park to investigate the drug crime, is objectively unreasonable and a reasonable jury could find that Aaron's constitutional rights were violated because he was arrested without probable cause. Further, Shelley and Rozenski seem to be playing a shell game in which they attempt to take the court's attention away from the true crime that was committed in the park on September 17, 2005 by Thompson, Jones, Long, and Curtis, which was the possession, sale and/or use of crack cocaine, marijuana and vicodin in a public park. Shelley and Rozenski also want the court to believe that they based their decision to arrest Aaron on the statements of Thompson, Jones, Long, and Curtis, the very people who Aaron called them to the park to investigate and who apparently admitted to possessing drugs in the park. Even more spectacular is that Shelley and Rozenski ask the court to believe that they were so disturbed by Aaron's lack of

police identification, that they released the suspected drug dealers and ordered Aaron back to the park and arrested him.

It is without question that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has determined that a qualified immunity analysis consists of two steps: (1) a determination of whether the officer's conduct violated a constitutional right; and (2) a determination of whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And, recently the United States Supreme Court stated

> [W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.

*Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

There is no question that "[t]he Fourth Amendment right of citizens not to be arrested without probable cause is . . . clearly established." *Kuehl v. Burtis*, 173 F.3d 646, 649 (8th Cir. 1999). The question thus becomes whether Aaron's arrest was constitutionally valid, which turns "upon whether, at the moment the arrest was made, the officers had probable cause to make it . . . " *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause is defined as "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in

believing that the [suspect] had committed or was committing an offense." *Id.*

In their motion for summary judgment, Shelley and Rozenski argue that they had probable cause to arrest Aaron for impersonating a police officer, for terroristic threatening, and for false imprisonment. A reasonable jury, however, could find that on September 15, 2005, it was objectively unreasonable for Shelley and Rozenski to believe that Aaron had committed a crime and that Shelley and Rozenski therefore lacked probable cause to arrest Aaron.

### *1. Criminal Impersonation*

To have probable cause to arrest Aaron for criminal impersonation of a police officer as set forth in Arkansas Code Annotated Section 5-37-208, Shelley and Rozenski would not only have to believe that Aaron pretended to be a law enforcement officer but that he did so "with the intent to induce a person to submit to pretended official authority <u>for the purpose to injure or defraud</u> . . . " There are questions of material fact in dispute as to whether Aaron said that he was a police officer. He disputes it, and Long said he did not represent that he was an officer. Further, even if he did represent he was an officer, the letter from Robert Retford, the Police Chief of the City of England, Arkansas, shows that Aaron in fact was a Part Time II officer on the day in question. Although there is a factual dispute as to whether Shelley and Rozenski had access to this information on the day in question, even if these facts were unknown to Shelley and Rozenski, there is nothing in the record remotely showing that Aaron told anyone he was a police officer for the purpose of injuring or defrauding anyone. Indeed, it is undisputed that he saw drug activity and he called the police to the

scene. The mere fact that he could not provide police identification to the Jacksonville police did not give Shelley and Rozenski probable cause to arrest him.

Finally, the record is clear that there were no exigent circumstances requiring Shelley and Rozenski to arrest Aaron on September 15, 2005 before performing a more thorough investigation. Indeed, Aaron was the one who called the police to the park and he provided the police with his contact information so that he could provide a statement. He also accepted the cell phone call from the police and returned to the scene to speak with the police.

For these reasons, a reasonable jury could find that the officers lacked probable cause to arrest Aaron for criminal impersonation of a police officer. Therefore, neither summary judgment nor qualified immunity is appropriate.

*2. Terroristic Threatening*

To have probable cause to arrest Aaron for terroristic threatening as set forth in Arkansas Code Annotated Section 5-13-301, Shelley and Rozenski would have to believe that Aaron took his actions "for the purpose of terrorizing another person." The state of the record is such that it would be objectively unreasonable for Shelley and Rozenski to believe that Aaron had committed the offense of terroristic threatening. This is true for all of the reasons that were set forth in section 1 above. Therefore, neither summary judgment nor qualified immunity is appropriate.

*3. False Imprisonment*

To have probable cause to arrest Aaron for false imprisonment as set forth in Arkansas

Code Annotated Section 5-11-104, Shelley and Rozenski would have to believe that, without consent and without lawful authority, Aaron knowingly restrained another person so as to interfere substantially with that person's liberty. There are material issues of fact in dispute regarding this claim and it should therefore be submitted to the jury. Neither summary judgment nor qualified immunity is appropriate.

### III.  CONCLUSION

After reviewing the record, the court finds that a reasonable jury could determine that the officers lacked probable cause for Aaron's arrest, thus violating his clearly established rights under the Fourth Amendment. Indeed, after reviewing the record, the precedent and exercising good common sense judgment, the court simply cannot find that it was objectively reasonable for Shelley and Rozenski to believe that Aaron had violated any law, including the three statutes that he was charged with violating, especially given the fact that he was the one who called the police to the park to investigate the drug activity. This view is only strengthened by the fact that Shelley and Rozenski claim to have arrested Aaron based upon the statements of the very people whom Aaron called the officers to the park to investigate. Indeed, the officers' probable cause determination was allegedly based on the statements of the very people who admitted to possessing crack cocaine, marijuana and vicodin in the park and whom the officers released. Finally, the court is mindful that Aaron provided the officers with his contact information so that he could give a statement to the police and that he returned to the park when the officers called him back.

For all of the reasons set forth above, summary judgment is granted as to Aaron's

claims against the City of Jacksonville and against Shelley and Rozenski in their official capacities and those claims are hereby dismissed with prejudice.  Summary judgment is denied as to Aaron's claims against Shelley and Rozenski in their individual capacities and the parties shall proceed to trial on these claims.

    IT IS THEREFORE ORDERED this 29th day of October, 2009.

                                                   */s/ Brian S. Miller*
                                      UNITED STATES DISTRICT JUDGE